UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

UNITED STATES OF AMERICA ex rel.
RELATOR LLC,

                              **MEMORANDUM & ORDER**

            Plaintiff,          24-CV-901(EK)(MMH)

         -against-

DAVID O'ROURKE, THE NEW YORK RACING
ASSOCIATION, INC., and DOES 1-10,

         Defendants.

--------------------------------------x
ERIC KOMITEE, United States District Judge:

      The relator in this *qui tam* action — named Relator LLC — brings suit against the New York Racing Association and its chief executive officer, David O'Rourke.  It claims that the Association and O'Rourke falsified an application for a Paycheck Protection Program ("PPP") loan during the Covid-19 pandemic, and thereby defrauded the federal government out of $10 million in violation of the False Claims Act ("FCA").  The defendants now move to dismiss, arguing that Relator's suit improperly relies on publicly disclosed information and, in any event, fails to state a claim.  For the reasons stated below, the motion is granted.

## I.  Background

      The facts below are drawn from the complaint, documents incorporated by reference into the complaint, and

documents "integral to" it.  *Chambers v. Time Warner*, 282 F.3d 147, 152-53 (2d Cir. 2002).[1]  They are presumed true for purposes of this order.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 124 (S.D.N.Y. 2013) ("[A]t this stage of the proceedings, the Court must accept the factual allegations contained in the [documents incorporated by reference into the complaint] as sufficiently reliable as a factual source for Plaintiffs' allegations.").

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").  Pub L. No. 116-36, 134 Stat. 281 (2020); *see also* Compl. ¶ 26.  Among other things, that statute created a loan program — the PPP — for small businesses threatened by the pandemic.  *See* 15 U.S.C. § 636(a)(36); Compl. ¶ 28.

In late March or early April 2020, the New York Racing Association (the "Association") applied for a PPP loan.  Compl. ¶¶ 19-21, 46.[2]  To qualify for the loan, a business had to represent, among other things, that it had fewer than 500

---

[1] A document is incorporated by reference if the complaint "makes a clear, definite[,] and substantial reference to the document." *Stinnett v. Delta Air Lines*, 278 F. Supp. 3d 599, 608 (E.D.N.Y. 2017).  A document is "integral to" the complaint if the complaint "relies heavily upon [the document's] terms and effect." *Chambers*, 282 F.3d at 153.

[2] It is not clear from the record when exactly the Association filed its application, but it must have been at some point between March 27 (when Congress enacted the PPP program) and April 12 (when the application was approved).  *See* Compl. ¶¶ 26-28, 46.

employees, that "the uncertainty of current economic conditions makes necessary the loan request," and that it would only use the loan proceeds "to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments." 15 U.S.C. § 636(a)(36)(D), (G).  On its application, the Association represented that it had 453 employees, that it needed the loan to support its ongoing operations, and that it would use the loan to retain workers and make payroll.  Compl. ¶¶ 46, 49, 54.  In April 2020, the Association received a $10 million PPP loan.  *Id.* ¶ 46.

Relator alleges that the Association's representation that it had 453 employees was false.  Specifically, it alleges that this representation conflicted with (1) Dun & Bradstreet's statement that the Association had 1,400 employees, *id.* ¶ 8; (2) the Association's October 2021 statement to the *Times-Union* newspaper that it had 821 full-time employees on March 1, 2020, *id.* ¶ 13; and (3) the Association's June 2022 statement to the *Times-Union*[3] that it had 1,149 full- and part-time employees "in 2020," *id.* ¶ 13; *see* June Article 2, ECF No. 20-6.

Relator also alleges that the Association's plea of economic necessity was false.  It quotes a January 2021 article in the *Times-Union* stating that the Association's "all-sources

---

[3] The *Times Union* is (in its own estimation, at least) "the leading news organization in New York's Capital Region."  *Times Union*, HEARST, https://perma.cc/9W7F-VN7N (last accessed Mar. 18, 2026).

handle," or amount of money wagered, "declined year-over-year by just fourteen percent" from 2019 to 2020.  Compl. ¶¶ 8, 13.[4] Indeed, in June 2022, the Association told the *Times-Union* that 2021 (the year *after* it received the PPP loan) was a "banner year" for revenue.  Compl. ¶¶ 5, 8, 12 n.4, 13, 53; *see also* June Article 1, ECF No. 20-6.  Among other things, according to its public financial statements, the Association generated more than $9 million in 2021 from a deal with Fox Sports.  *Id.* ¶ 13. A state auditor's report covering the period between January 2018 and December 2020 also found that the Association "may have" overspent on certain procurement.  *See* Skip Dickstein, *State Comptroller: NYRA 'Spends Money Lavishly,' Flouts Purchasing Rules*, TIMES UNION (Mar. 16, 2022) ("March 2022 Article") 2, ECF No. 20-7; *see also* Compl. ¶ 5 (referencing this finding).  Relator alleges that these data points undermine the Association's representation that it needed the PPP loan to make payroll during the pandemic.  *Id.* ¶¶ 53-54.

Finally, Relator alleges that because the Association misrepresented its eligibility for the PPP loan, it necessarily misrepresented its eligibility for loan forgiveness.  If the

---

[4] In the same paragraph, Relator alleges that the Association's "total handle in 2020" represented a "19% increase over 2019."  Compl. ¶ 13.  The Court is at a loss to understand how these two year-over-year figures — down 19% and up 14% — can be reconciled.  The dollar values alleged ($2,108,126,369 for 2019 and $1,813,935,091 for 2020) are generally consistent with the 14% decrease.

Association was not entitled to the loan in the first place, the argument goes, then it was also not entitled to have the loan forgiven.  *Id.* ¶ 56.  This allegation again relies primarily on the reports and articles discussed above.[5]

## II.  Legal Standard

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[6]  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When a complaint alleges false statements under the FCA, the heightened pleading requirements of Federal Rule of

---

[5] The Relator is in a bind, of sorts: on the one hand, it quotes the *Times Union* at some length in its effort to state a claim; but on the other hand, it needs to avoid the FCA's public-disclosure bar.  *See* 31 U.S.C. § 3730(e)(4)(A) (court "shall dismiss an action" if "substantially the same allegations" have been publicly disclosed in "the news media").  In the end, Relator argues that it referred to these documents "for background and context" only and that the Court may not consider the documents themselves in full — only the allegations taken from those documents that appear in the complaint.  Pl.'s Mem. in Opp'n to Mot. to Dismiss 11, ECF No. 21.  Its effort to thread that needle is untenable; a court may consider a document "integral" to the complaint even if the complaint "contains only limited quotation from that document."  *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 808 (2d Cir. 1996).  Nor must the court "limit its consideration to [the plaintiff's] selected quotations": it may consider the "full text" of the outside documents to contextualize the plaintiff's quotations.  *Id.* at 808-09.  Here, because the documents cited are the source of plaintiffs' key factual allegations — such as the Association's job and revenue numbers — they are appropriately deemed integral to the complaint.  *Chambers*, 282 F.3d at 153.

[6] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Civil Procedure 9(b) apply.  *Miller v. United States ex rel. Miller*, 110 F.4th 533, 543 (2d Cir. 2024).  To satisfy that rule, "a complaint alleging fraud [ordinarily must] (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Chorches for Bankruptcy Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017).

### III. Discussion

The defendants offer two reasons for dismissal. First, they argue that the FCA's public-disclosure bar precludes relief.  Second, they argue that Relator fails to state a claim. Because the Court agrees with the second argument, it need not address the first at length.  *Id.* at 80 ("[T]he public disclosure bar is [not] jurisdictional.").

To state an FCA claim, a relator must allege that the defendant "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001).  Relator has not plausibly alleged the third or fourth elements of this standard.

6

**A.    Relator Does Not Plausibly Allege False or Fraudulent Statements**

Relator has not plausibly alleged that the defendants' representations about the Association's employment figures, the economic necessity of the PPP loan, its use of the PPP loan for authorized purposes, or its eligibility for loan forgiveness were false.

1.    <u>The Association's Employment Figures</u>

Relator first claims that the defendants lied about the number of employees on the Association's payroll.  Relator argues that the Association's statements to the *Times-Union* contradict the employment figures on its PPP application. Specifically, Relator points to the disparity between the Association's statement that it had more than 800 full-time workers at the start of March 2020, and its statement to the federal government that it had 453 employees at the end of March 2020.  *See* Compl. ¶¶ 13, 46.  But, of course, something rather notable was transpiring in the *middle* of March 2020: the rapid early spread of the pandemic.  And Relator never plausibly alleges that the difference between the Association's early-March and late-March employment figures stemmed from deception, rather than the intervening economic shock visited by the quarantine and lockdown processes.  This undermines Relator's claim that the Association's employment representations were

7

false.  *See, e.g.*, *Panther Partners, Inc. v. Ikanos Comm'ns, Inc.*, 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008) ("An earlier statement is not somehow made misleading simply because it failed to foretell a . . . problem which later materialized."); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) ("In order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is . . . the result of a falsehood.").

Relator's reliance on the Association's second statement to the *Times-Union* fares no better.  The Association told the *Times-Union* that it had 1,149 full- and part-time workers "in 2020."[7]  But the Association never provided a precise timeframe.  Again, it is entirely possible that this figure referred to pre-shutdown employment, rather than employment in late-March 2020.  So, this statement does not necessarily contradict the Association's 453-employee estimate either.  It therefore does not render Relator's claim plausible, especially under the heightened standard imposed by Rule 9.  *See Ashcroft*, 556 U.S. at 678 (plaintiff must allege more than the "sheer possibility that a defendant has acted unlawfully"); *Am. Med. Response, Inc.*, 865 F.3d at 81 (under Rule 9's heighted pleading

---

[7]  The definition of "employee," for purposes of PPP loan eligibility, included "individuals employed on a full-time, part-time, or other basis." 15 U.S.C. § 636(a)(36)(D)(v).

standard, plaintiff must ordinarily "explain why the [challenged] statements were fraudulent").

Finally, Relator's reliance on numbers in the Dun & Bradstreet report is unavailing. That report identifies the Association's total employment as 1,400. *See* ECF No. 20-11. The report does not, however, state the period from which it draws this estimate. Nor does it explain Dun & Bradstreet's methodology. And the complaint fills neither gap. So, the allegations predicated on the Dun & Bradstreet report raise little more than the speculative possibility that the Association's 453-employee representation was false when made. That is not enough to survive a motion to dismiss. *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 158 (S.D.N.Y. 2023) (observing that "unsourced and secondhand allegations in a short-seller's report cannot, without more, be credited on a motion to dismiss"); *In re FuBoTV Inc. Sec. Litig.*, No. 21-CV-01412, 2024 WL 1330001 (S.D.N.Y. Mar. 28, 2024) (similar).

2.   The Economic Necessity of the PPP Loan

The complaint likewise fails to indicate why the defendants' representation that the Association needed a PPP loan was false. Relator alleges that the Association's financial rebound in 2021 and its better-than-expected performance through the end of 2020 falsify the claim that it was struggling in March 2020. *See* Compl. ¶¶ 5, 8, 12-13, 53.

9

But the fact that the Association did well *after* receiving the PPP loan says nothing about its economic state *before* receiving it.  *See Wandel v. Gao*, 590 F. Supp. 3d 630, 645 (S.D.N.Y. 2022) (fact that company revised financial projections several months after IPO did not "connote that [its] earlier statement about its earning expectations was false or misleading when made"); *cf. Aid Auto Stores, Inc. v. Cannon*, 525 F.2d 468, 471 (2d Cir. 1975) ("Proof that [a bank] later . . . went out of business would not establish its financial condition at the time of the alleged fraudulent misrepresentation [about its solvency].").

The state auditor's conclusion that the Association's procurement practices "may have" led to overspending does not alter this conclusion.  That report covered the period from January 2018 through December 2020 and therefore spoke to practices that predated the pandemic.  *See* Off. of the New York State Comptroller, *New York Racing Association, Inc.: Purchasing and Procurement Practices* 1 (March 2022).[8]  But whether the Association was generally mismanaged says nothing about its business prospects prior to March 2020 or how the pandemic-induced recession altered them.  Thus, the auditor's report does not plausibly suggest that the Association's plea of economic necessity due to the "uncertainty of . . . economic conditions" in Spring 2020, 15 U.S.C. § 636(a)(36)(G), was false.

---

[8] https://perma.cc/MCJ6-4HXM.

3.    <u>Authorized Expenses and Loan Forgiveness</u>

Finally, Relator alleges that the Association lied about using the PPP loan to pay authorized expenses and about being eligible for loan forgiveness.  The complaint pleads no facts that independently support these allegations.  Rather, it alleges that because the Association lied about its eligibility for the loan, it necessarily lied about using that loan on authorized expenditures and its eligibility for loan forgiveness.  Compl. ¶¶ 54-56.  However, as already explained, the complaint does not plausibly allege that the Association lied about its economic necessity or its employment figures.  So, on the Relator's own logic, it also does not plausibly allege that the Association lied about its authorized expenses or its forgiveness eligibility.

**B.    Relator Does Not Plausibly Allege Scienter**

The complaint must be dismissed for another, independent reason: it does not allege scienter.  To state a claim under the FCA, a plaintiff must allege that the defendant knew about, deliberately ignored, or recklessly disregarded the falsity of its statements to the government.  31 U.S.C. §§ 3729(b)(1)(A)(i)-(iii).

Here, the complaint offers no facts suggesting any such mental state.  Instead, it relies on the conclusory assertion that the defendants "knowingly and intentionally made

11

many false statements to the government." Compl. ¶ 16; *see also id.* ¶¶ 47-48. This is not enough. *Ashcroft*, 556 U.S. at 678. Nor is the complaint's allegation that O'Rourke must have known his statements were false because he was the Association's experienced chief executive. Compl. ¶ 47. "It is practically hornbook law that accusations . . . which are founded on nothing more than a defendant's corporate position[] are entitled to no weight." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 806 (S.D.N.Y. 2020) (collecting cases); *see also In re Cronos Grp. Inc. Sec. Litig.*, No. 20-CV-1310, 2023 WL 8003324, at *9 (E.D.N.Y. Nov. 11, 2023) ("Sophistication alone . . . is insufficient to establish scienter."). Thus, even if the complaint plausibly alleged false statements (which it does not), it still would not survive.[9]

## IV.  Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted without prejudice, and with leave to amend.

---

[9] It bears noting that Relator's effort to state an FCA claim relies entirely, or at least almost entirely, on public sources like *Times Union* articles and the Pandemic Oversight website. *See, e.g.*, Compl. ¶¶ 11-13; *PPP Borrower Search*, Pandemic Oversight, ECF No. 20-4. Accordingly, to the extent Relator *had* stated a claim, the "material elements of the fraud have [already] been publicly exposed," thereby triggering the public-disclosure bar. *United States ex rel. Patriarca v. Siemens Healthcare Diagnostics, Inc.*, 295 F. Supp. 3d 186, 197 (E.D.N.Y. 2018) (collecting cases).

12

If Relator does not file an amended complaint within 30 days,

the Court will enter judgment and close this case.[10]


SO ORDERED.


                                    /s/ Eric Komitee
                                    ERIC KOMITEE
                                    United States District Judge


Dated:      March 23, 2026
            Brooklyn, New York

---

[10] The government requested that we "solicit [their] written consent" before dismissing this action.  Gov't's Notice of Election to Decline Intervention 1, ECF No. 5 (citing 31 U.S.C. § 3730(b)(1) ("The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.")).  But the Second Circuit has squarely held that Section 3730(b)(1)'s requirement "applies only in cases where a plaintiff seeks voluntary dismissal of a claim or action brought under the False Claims Act, and not where the court orders dismissal." *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990).  Indeed, it would be "particularly inappropriate" to require the Attorney General's consent before dismissing an FCA action in circumstances like these, where the government has already declined to intervene.  *Id.* at 104.